| | | |
|---|---|---|
| MARY SWEARENGIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-32-DCP |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Deputy Commissioner for Operations, | ) | |
| performing the duties and functions not | ) | |
| reserved to the Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court is

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. Mary

Swearengin ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge

("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social

Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART**

**AND DENY IN PART** Plaintiff's motion and **GRANT IN PART AND DENY IN PART** the

Commissioner's motion.

## I.       PROCEDURAL HISTORY

On March 31, 2011, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court hereby substitutes Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, as the Defendant in this case.

began on April 11, 2009. [Tr. 324]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 173]. A hearing was held on December 7, 2012. [Tr. 31-37]. On March 12, 2013, the ALJ found that Plaintiff was not disabled. [Tr. 143-55]. The Appeals Council accepted review of the ALJ's decision, and the case was remanded back to the ALJ on July 25, 2014, for further proceedings. [Tr. 160-64].

On April 23, 2015, the ALJ conducted a second hearing. [Tr. 43-102]. Thereafter, on July 30, 2015, the ALJ issued a new decision, again finding that Plaintiff was not disabled. [Tr. 19-36]. The Appeals Council denied Plaintiff's request for review [Tr. 1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on February 2, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2014.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 11, 2009 through her date last insured of June 30, 2014 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following "severe" impairments: *obesity, diabetes with diabetic neuropathy; status-post bilateral carpal tunnel release; degenerative disc disease, status-post decompression and removal of herniated disc at L4 in 2001; and depression* (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform *light* work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and handle and finger with the bilateral upper extremities. She can never climb ladders, ropes, or scaffolds; but can occasionally crawl, and reach above shoulder-level with the right upper extremity. She is able to remember and carry out simple and detailed tasks; adapt to frequent changes in the work setting; maintain concentration, persistence and pace for simple and detailed tasks; and respond appropriately to supervision, co-workers, and usual work situations.

6. Through the date last insured, the claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 13, 1962 and was 52 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).[2]

8. The claimant has a *limited education* and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is *unskilled* (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from April 11, 2009, the alleged onset date, through June 30, 2014, the date last insured. (20 CFR 404.1520(g)).

[Tr. 22-35].

---

[2] At age 52 on the date last insured, June 30, 2014, Plaintiff would not be a "younger individual age 18-49."

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits."  *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

# IV.    DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff sets forth numerous errors she alleges the ALJ committed in assessing her RFC and step five of the sequential evaluation. In sum, Plaintiff avers that the ALJ erred by (1) finding a walking assistive device was not medically necessary, (2) assigning little weight to the opinions of treating physician, Michael West, M.D., and consultative examiner, Jeffrey Summers, M.D., and great weight to non-examining state agency physician, Deborah Webster-Clair, M.D., (3) finding Plaintiff less than fully credible, and (4) failing to address Plaintiff's post-hearing objections to the testimony provided by the vocational expert ("VE"). [Doc. 17 at 4-26]. The Court will address the alleged errors in turn.[3]

### A.     Medical Necessity of a Hand-Held Assistive Device

In the disability determination, the ALJ found that although Dr. Summers, a one-time consultative examiner, concluded that Plaintiff was reliant upon her cane for ambulating greater than 20 feet, "there is no evidence that it has ever actually been prescribed" and, therefore, "there

---

[3] Plaintiff's allegations of error are addressed in the order they arise in the sequential evaluation process, rather than the order they appear in her brief.

is no medically documented need for this assistive device." [Tr. 28]. Plaintiff disagrees with the ALJ's conclusion and argues that the medical evidence of record supports Plaintiff's testimony that she required a cane. [Doc. 17 at 10-11]. Contrary to Plaintiff's assertion, the Court finds that the record supports the ALJ's determination.

Social Security Ruling 96-9p provides the operative law on this point:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (July 2, 1996). The Sixth Circuit Court of Appeals has explained that unless a cane is a necessary device, it will not be considered an exertional limitation that reduces a claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). "A cane would be medically necessary if the record reflects more than just a subjective desire on the part of the plaintiff as to the use of a cane." *Murphy v. Astrue*, No. 2:11-CV-00114, 2013 WL 829316, at *10 (M.D. Tenn. Mar. 6, 2013), *adopted sub nom.*, *Murphy v. Colvin*, No. 2:11-CV-00114, 2013 WL 4501416 (M.D. Tenn. Aug. 22, 2013) (citing *Penn v. Astrue*, 2010 WL 547491, at *6 (S.D. Ohio Feb.12, 2010)).

Here, Plaintiff testified that she used a cane for stability and cites to various medical records that she contends substantiates her testimony. [Doc. 17 at 10]. As an initial matter, the Court notes that Plaintiff's testimony is insufficient to establish that her use of a cane was medically necessary. *See Mitchell v. Comm'r of Soc. Sec.*, No. 13CV01969, 2014 WL 3738270, at *12 (N.D. Ohio July 29, 2014) (finding that Plaintiff's testimony did not qualify as "medical documentation

establishing the need" for the cane under SSR 96–9p).  As to the medical records relied upon by

Plaintiff, the Court finds that they do not establish that a cane was medically necessary.

Plaintiff concedes that her treating physician, Dr. West, never prescribed a cane but cites

to his treatment notes that document complaints of back pain as equivalent evidence.[4]  [Doc. 17 at

10] (citing Tr. 546, 567, 573, 5920, 613, 652, 686, 761, 767).  Complaints of back pain, however,

do not amount to "medical documentation establishing the need for a hand-held assistive device."

Furthermore, treatment notes do not describe "the circumstances for which it is needed."  In fact,

the same treatment notes cited by Plaintiff consistently document that during the relevant period

under review,[5] Plaintiff had normal balance, gait, and stance [Tr. 547, 568, 574, 591, 614, 688,

770] with the exception of one occasion on February 28, 2012, in which Dr. West noted that

Plaintiff's gait and stance were abnormal and she appeared with a walker [Tr. 653].  However,

---

[4] In a footnote, Plaintiff contends that a hand-held assistive device need not be "prescribed" to be found medically necessary.  [Doc. 17 at 11 n.11].  The lack of a prescription, however, is an appropriate factor to consider as to whether substantial evidence supports the ALJ's decision that a case was not medically necessary.  *See Mitchell*, 2014 WL 3738270 at *12-13 (specifying that plaintiff's "testimony makes clear that no doctor prescribed him a cane," while holding that "[a]s there is no medical document establishing that [plaintiff] required the use of a cane . . . the ALJ did not err by omitting the use of a cane from his hypothetical questions to the vocational expert"); *Murphy*, 2013 WL 829316 at *10 (holding there was substantial evidence to "support the ALJ's decision that the plaintiff's cane was not medically necessary," and noting that "the cane was never prescribed by any physician, treating or otherwise"); *compare Simmons v. Comm'r of Soc. Sec.,* No. 1:12-CV-2591, 2013 WL 3873952 at *11 (N.D. Ohio July 25, 2013) (where the medical record included a prescription for the cane from the treating physician, the ALJ was obligated to determine whether the cane was medically necessary).

[5] To establish entitlement to Title II disability benefits, Plaintiff must show she was disabled between her alleged onset date (April 11, 2009) and her date last insured (June 30, 2014).  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status.") (citations omitted).

even this particular treatment note does not document Dr. West's belief that the walker was medically necessary, and there is no medical documentation indicating that she was prescribed a walker.

Plaintiff also points to a "Diabetes Mellitus Medical Source Statement" completed on December 3, 2012, wherein Dr. West opined that Plaintiff required the use a cane to stand or walk. [Doc. 17 at 10] (citing T.R. 678). But notably, on that same day, Dr. West also completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" wherein he failed to opine that Plaintiff required a cane despite being asked whether an assistive device for ambulation was necessary. [Tr. 665]. Despite Dr. West opining in the "Diabetes Mellitus Medical Source Statement" that Plaintiff required a cane, the Court finds Dr. West's conclusion is not only contradicted by his subsequent medical source statement, but his treatment notes during the relevant period under review overwhelmingly document a normal ability to balance, walk, and stand without mention of a cane.

Finally, Plaintiff cites to Dr. Summers's opinion which concluded that Plaintiff required the use of a cane when ambulating greater than 20 feet. [Doc. 17 at 11] (citing Tr. 721, 728). Dr. Summers's opinion offers no further persuasive evidence because his opinion, which was rendered after Plaintiff's insured status expired, is inconsistent with treatments notes during the relevant period under review demonstrating that a cane was not utilized or necessary based on benign examination findings.

Based on the foregoing, while there are some indications in the medical records that Plaintiff was using a cane, and on one occasion using a walker, this is insufficient to establish that a hand-held assistive device was medically required. Further, Plaintiff fails to cite to any medical records describing the circumstances for which such a device is needed as required by SSR 96-9p.

Accordingly, the Court concludes that substantial evidence supports the ALJ's finding that a cane was not medically necessary. *See Forester v. Comm'r of Soc. Sec.*, No. 16–CV–1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) ("Where there is conflicting evidence concerning the need for a cane, it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.") (citation and internal quotation marks omitted).

### B. Medical Opinions

In assessing the medical opinions of record, the ALJ gave great weight to the opinion of non-examining state agency physician, Dr. Webster-Clair, over the opinions of Plaintiff's treating physician, Dr. West, and one-time consultative examiner, Dr. Summers, both of whom received little weight by the ALJ. [Tr. 28-30]. Plaintiff cites numerous errors by the ALJ in weighing the opinion evidence of record and generally argues that "good reason" was not given by the ALJ in weighing these opinions. [Doc. 17 at 15-23].

The regulations create a presumption in favor of opinions from treating sources as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). However, a treating source opinion only enjoys controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (holding that the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times").

10

When an ALJ does not give a treating source opinion controlling weight, the ALJ must always give "good reasons" for the weight assigned, taking into consideration the length of treatment, frequency of examination, the nature and extent of the treatment relationship, the amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

By contrast, opinions from non-treating, examining and non-examining medical sources are never assessed for controlling weight but are evaluated using the same regulatory balancing factors set forth in section 404.1527(c)(1)-(6). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)).

With these principles in mind, the Court turns to the specific errors raised by Plaintiff as to each challenged medical source.

### 1. Michael H. West, M.D.

The record contains six different medical source statements and one letter by Dr. West pertaining to Plaintiff's physical and mental limitations as follows. On March 13, 2012, Dr. West completed an "Anxiety Related Disorder" opinion form [Tr. 655-57], and on December 3, 2012, Dr. West authored the remainder of his medical source statements, including a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" [Tr. 658-66], a "Depression & Anxiety Questionnaire" [Tr. 667-70], a "Medical Statement Regarding Hand and Wrist Problems" [Tr. 671-72], a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" [Tr. 673-75], and a "Diabetes Mellitus Medical Source Statement" [Tr. 676-80]. Lastly, he wrote a letter on October 7, 2014, regarding Plaintiff's inability to work due to her physical impairments. [Tr. 717].

In sum, as to Plaintiff's mental limitations, Dr. West described symptoms of anxiety and depression that translated into functional limitations of mild-to-moderate restrictions in activities of daily living, moderate restrictions in maintaining social functioning, moderate-to-marked restrictions in concentration, persistence, or pace, and moderate-to-marked episodes of deterioration or decompensation. [Tr. 655-57, 659-61, 667-70]. Dr. West subsequently opined that Plaintiff's mental impairments caused a slight to moderate impact on her ability to understand, remember, and carry out simple and detailed instructions, as well as respond appropriately to supervision, co-workers, changes, and pressures in a work setting. [Tr. 673-74].

Regarding Plaintiff's physical limitations, Dr. West concluded that Plaintiff had "severe carpal tunnel syndrome" that resulted in an inability to perform fine and gross movements effectively. [Tr. 665, 672]. Plaintiff could frequently perform fine manipulation bilaterally and could occasionally perform gross manipulation bilaterally. [Tr. 671]. As to her remaining physical limitations caused by carpal tunnel, degenerative disc disease, and diabetic neuropathy, Dr. West opined that Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently; she could stand and walk for less than two hours and sit for four hours, provided she could frequently change positions; she could never crouch or climb ladders, but she could occasionally twist, stoop, and climb stairs; she must avoid moderate exposure to cigarette smoke and concentrated exposure to all other environmental factors; she could not perform even low stress work and would miss more than four days of work per month; and she was "currently unable to hold any type of gainful employment." [Tr. 664-66, 676-80, 717].

In discounting Dr. West's opinions, the ALJ cited to inconsistencies and the lack of support between the limitations assessed and Dr. West's own treatment notes and examination findings. [Tr. 29-30]. The ALJ found that treatment notes documented normal examination findings,

including normal gait and strength in the upper and lower extremities, denial of neuropathy and muscle weakness, no objective testing performed in regard to Plaintiff's carpal tunnel syndrome since her 2007 carpal tunnel release surgery, and the lack of any narrative documenting Plaintiff's alleged disabling depression as well as her denial of associated symptoms. [Tr. 29]. In sum, the ALJ found that the functional limitations assessed by Dr. West were disproportionate with his clinical findings and Plaintiff's denial of symptomatology initially alleged in connection with her application for disability. [*Id.*].

Plaintiff disagrees with the ALJ's finding and contends that Dr. West and Dr. Summers found abnormalities in Plaintiff's gait, range of motion, and strength. [Doc. 17 at 19-21]. But as discussed above, treatment records overwhelming document normal balance, gait, and stance with only a single mention during the relevant period under review of Plaintiff appearing with a walker. Similar to Plaintiff's gait, the record includes minimal instances of limited range of motion testing of the lumbar spine. [Tr. 574, 728]. Instead, Dr. West more often noted tenderness of the lumbar spine but also indicated on many occasions normal musculoskeletal findings, no motor deficits, and normal muscle strength. [*See e.g.*, Tr. 547, 565-66, 568, 574, 591, 605, 614, 653, 684].

Plaintiff also submits that her type II diabetes mellitus was poorly controlled. [Tr. 17 at 20] (citing Tr. 566, 685). The cited records, however, note that Plaintiff's symptoms were actually controlled, and Plaintiff reported doing well, denied worsening of foot numbness or pain, and examination findings included normal muscle strength, tone, and sensation. [Tr. 565, 681, 684; *see* Tr. 761 (Plaintiff reported diabetes was under control and denied numbness and pain in her feet)].

The Court is likewise unpersuaded by Plaintiff's contention that Dr. West's treatment notes "record[] reported complaints of pain/numbness in [Plaintiff's] hands and wrist . . . complaints of

right shoulder tenderness/pain and/or multiple joint tenderness . . . consistent with Plaintiff's testimony that her carpal tunnel syndrome and right shoulder pain are limiting conditions." [Doc. 17 at 20-21] (citing Tr. 563, 566, 568, 574, 591, 604-05, 611). As the ALJ observed, despite Plaintiff alleging that her carpal tunnel syndrome is one of her most limiting impairments, over the six-year period under review, specific reference to Plaintiff's hands and wrist was only mentioned twice by Dr. West. [Tr. 29, 566, 604]. Although Plaintiff cites to records that document "multiple joint tenderness" generally, there is no specific mention or examining findings of Plaintiff's hands, wrists, or complaints related to carpal tunnel. [Tr. 563, 568, 591]. Moreover, Plaintiff exhibited right shoulder tenderness on a single occasion. [Tr. 574].

Similarly unavailing are the limitations opined by Dr. West related to Plaintiff's depression and anxiety as found by the ALJ. [Tr. 29]. Dr. West exclusively noted euthymic mood on examination through June 2011 [Tr. 546-615], and thereafter he noted Plaintiff had no anxiety, her depression was stable and relieved by medication, and her mood and affect were normal [Tr. 652, 681, 684, 688, 697, 761-62, 765, 767].

In sum, the Court finds that the ALJ's conclusion that Dr. West's treatment notes do not support the severity of limitations assessed is well within the zone of choices offered by the evidence. *See Blakley*, 581 F.3d at 406 (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted). While Plaintiff argues [Doc. 17 at 18-19] that the ALJ also impermissibly discounted Dr. West's opinions for appearing to rely too heavily on Plaintiff's subjective allegations [Tr. 30], the Court finds that the ALJ's conclusion was reasonable given the disparity between the limitations assessed and the

14

symptoms reported and examination findings documented. The lack of support Dr. West's opinions find within his own treatment notes constitutes good reason for the assignment of little weight. *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes.").

Plaintiff's additional assignment of errors does not warrant remand. The ALJ found that Dr. West's opinions were "unreliable insofar as the claimant testified that she had not seen him in almost a year." [Tr. 30]. Plaintiff argues that the ALJ is incorrect, and that the record demonstrates Dr. West continued to treat Plaintiff through March 2, 2015. [Doc. 17 at 17]. But the ALJ's comment was with specific regard to the time that had elapsed between Dr. West's opinions and when he had last examined Plaintiff prior to issuing his opinions. Indeed, almost all of Dr. West's opinions, and exclusively those pertaining to Plaintiff's physical limitations, were completed on December 3, 2012, and Dr. West had not treated Plaintiff since February 28, 2012. [*Compare* Tr. 118 and 653 *with* Tr. 663-80]. The regulations permit adjudicators to take into consider "any factors . . . which tend to support or contradict" a treating source's opinion. 20 C.F.R. § 404.1527(c)(6).

The ALJ also concluded that some of Dr. West's opinions were not "medical opinions" as defined by the regulations in that Dr. West opined on matters reserved for the Commissioner's determination. [Tr. 29]. Plaintiff contends that Dr. West opined on Plaintiff's functional limitations which did not invade the Commissioner's role. [Doc. 17 at 18]. The Court observes that on at least one occasion Dr. West opined that Plaintiff was unable to work. [Tr. 717]. Opinions that a claimant is "disabled" or "unable to work" are "not given any special significance" as they are findings reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1)-(3). Nonetheless, the

ALJ properly considered the functional limitations assessed and gave good reasons for concluding that the limitations were not substantiated by the medical evidence.

Plaintiff further takes issues with the ALJ's observation that he has never seen a case with so many opinions from a doctor, suggesting that Dr. West was sympathetic toward Plaintiff. [Tr. 30]. Plaintiff argues there is nothing improper about Dr. West addressing Plaintiff's physical and mental limitations by separate medical sources statements. [Doc. 17 at 18]. Notwithstanding the ALJ's comment in this regard, the ALJ provides good reasons, supported by the evidence, for assigning little weight to Dr. West's opinions and did not merely discount the opinions on the basis that Dr. West may have been overly sympathetic toward Plaintiff. Accordingly, the Court finds that the ALJ did not err in weighing the opinions of Plaintiff's treating physician.

### 2. Consultative Examiner, Jeffrey Summers, M.D.

Dr. Summers performed a consultative examination on October 27, 2014. [Tr. 726-29]. Plaintiff reported problems with her back and hands, explaining that "[s]he has been diagnosed with 'ruptured disks,'" and that in 2001, "she did undergo a laminectomy/discectomy procedure for lumbar spine." [Tr. 726]. Plaintiff reported her back problems persisted despite her surgical effort and treatment with medications. [*Id.*]. As to her hands, Plaintiff reported problems with grasping and manipulating objects due to hand numbness, tingling, and weakness. [*Id.*]. Dr. Summers noted that "her condition has [been] evaluated by orthopedic surgeon, Dr. Ivy" and that "[s]he has been diagnosed with 'carpal tunnel syndrome.'" [*Id.*]. Dr. Summers recounted that in 2009, Plaintiff "did undergo bilateral carpal tunnel release surgery by Dr. Ivey" and has only experienced modest improvement in her condition. [*Id.*].

On examination, Plaintiff demonstrated full muscle strength throughout, her grip strength was mildly decreased at 4/5 bilaterally, her manual dexterity and fingering abilities were intact,

Tinsel's and Phalen's signs were absent, she had full range of motion in all joints except her lumbar spine, she had an abnormal gait and appeared with a quad cane, and straight leg raise testing was negative in the seated and supine position. [Tr. 728-29].

Dr. Summers assessed the following functional limitations: Plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally; she could sit for four hours total and two hours at one time, she could stand for three hours total and one hour at one time, and she could walk for three hours total and one hour at one time; she required a cane to ambulate greater than 20 feet; she could reach, push and pull continuously but could only handle, finger, and feel occasionally; she could use her feet continuously to operate foot controls; and she could climb stairs, kneel, and crouch occasionally but could never climb ladders or scaffolds, balance, stoop, or crawl. [Tr. 720-23].

The ALJ assigned Dr. Summer's opinion little weight because: (1) Plaintiff appeared with a self-prescribed cane, which made her appear more limited; (2) she implied to Dr. Summers that her diagnosis of "ruptured discs" was her current status but records demonstrate she underwent treatment for this impairment in 2001; (3) she likewise implied to Dr. Summers that a specialist had diagnosed her with carpal tunnel syndrome but she had not seen any specialist since her 2009 carpal tunnel release procedure; (4) none of Dr. Summers's finding outside of Plaintiff's control support the limitations assessed while objective testing, such as straight leg raise testing, Tinel's and Phalen's signs, were negative; and (5) Dr. Summers relied too heavily on Plaintiff's subjective allegations. [Tr. 30].

As an initial matter, the Court finds that the ALJ need not give good reason for the weight assigned to Dr. Summers's opinion as suggested by Plaintiff. [*See* Doc.17 at 12]. Good reason need only be given in explaining the weight assigned to a "treating source's opinion." 20 C.F.R.

§ 404.1527(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (a one-time consultative examiner is not due any special degree of deference). Instead, the regulatory balancing factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6) are used to weigh such opinions. *See Gayheart*, 710 F.3d at 376.

Turning to Plaintiff's specific contentions, Plaintiff submits that there is nothing within Dr. Summers's narrative report that suggests Plaintiff "implied" she currently has ruptured discs or that she was diagnosed with carpal tunnel syndrome after her release procedure. [Doc. 17 at 21]. The Court agrees and finds that the ALJ's interpretation of Dr. Summers's opinion on this point is not reasonable given that Plaintiff's 2001 and 2009 surgeries were specifically discussed in connection with Plaintiff's history of ruptured discs and carpal tunnel syndrome. [*See* Tr. 726]. Nonetheless, the Court finds that substantial evidence supports the assignment of little weight to the opinion.

The ALJ found that examination findings were not consistent with the limitations assessed. For example, while Dr. Summers limited Plaintiff to no more than occasional grasping, fingering, feeling, and manipulation of objections, Plaintiff's grip strength was only mildly diminished, her manual dexterity and fingering abilities were intact, and Tinel's and Phalen's signs were absent. Moreover, examination findings were largely unremarkable other than limited range of motion of the lumbar spine and Plaintiff's use of a cane. As with Dr. West, Plaintiff contends that the ALJ impermissibly found that Dr. Summers relied too heavily on Plaintiff's subjective complaints. [Doc. 17 at 21]. However, given the lack of corroboration between the limitations assessed and Dr. Summers's own examination findings, in addition to the ALJ's finding that a cane was not

18

medically necessary and the lack of complaints and overall benign examination findings regarding Plaintiff's hands, the Court finds that substantial evidence supports the weight assigned to Dr. Summers's opinion.

### 3. Non-Examining State Agency Physician, Deborah Webster-Clair, M.D.

Based on the available evidence through June 26, 2011, Dr. Webster-Clair completed a "Physical Residual Functional Capacity Assessment," finding that Plaintiff was limited to light work in that she had the following functional limitations: she could lift and carry up to 20 pounds occasionally and 10 pounds frequently; she could stand, walk, and/or sit for about six hours each in an eight-hour workday; she could push and/or pull with her upper extremities occasionally; she could climb ramps and stairs, balance, stoop, kneel, and crouch frequently, crawl occasionally, and never climb ladders, ropes, or scaffolds; and she could reach, handle, and finger occasionally but she could never reach overhead. [Tr. 624-31]. The ALJ found the opinion was entitled to great weight because it was consistent with the record, including Plaintiff's own reports of daily living activities and her reports to Dr. West. [Tr. 28].

Plaintiff suggests that the ALJ could not properly rely on Dr. Webster-Clair's 2011 opinion given that it was rendered prior to later generated evidence such as the opinions of Dr. West and Dr. Summers. [Doc. 17 at 22]. Plaintiff contends that the conclusions reached by Dr. Webster-Clair could have been different had she reviewed subsequent evidence, and that rather than rely on an outdated opinion, the ALJ should have arranged for additional consultative examinations, enlisted a medical expert to review the record and provide testimony, re-contact examining sources, or send the case back to the agency for review. [*Id.* at 22-23]. According to Plaintiff, the failure to utilize any of these options led the ALJ to impermissibly rely on her own lay opinion. [*Id.* at 23].

Although an ALJ must withstand the temptation to play doctor, she is responsible for considering all the medical opinions of record and "does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a" claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Rather, it is the Commissioner's prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)). After all, the ultimate decision of disability rests with the ALJ. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

Moreover, "[t]here will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 2009 WL 233266, at *5 (6th Cir. 2009). However, "absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Id.*; *see Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("When an ALJ relies on a [medical] source who did not have the opportunity to review later submitted medical evidence," our appellate court "require[s] some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record.") (internal citations and quotation marks omitted).

Here, Plaintiff does not identify specific evidence that undermines Dr. Webster-Clair's opinion beyond the opinions of Dr. West and Dr. Summers, which opinions the Court has found were properly weighed by the ALJ. Plaintiff merely suggests that "there is simply no way of knowing what Dr. Webster-Clair *would* have opined had she had access to the after-developed evidence." [Doc. 17 at 20] (emphasis in original). Plaintiff's proffer is insufficient to demonstrate

error by the ALJ. The ALJ alone is tasked with determining Plaintiff's RFC, and her decision establishes that she considered later generated evidence, including the opinions of Dr. West and Dr. Summers. Therefore, the ALJ reasonably concluded that the record as a whole, rather than just reliance on Dr. Webster-Clair's opinion, did not support the more limiting restrictions that were later opined. Accordingly, the Court finds that substantial evidence likewise supports the ALJ's assessment of Dr. Webster-Clair's opinion.

### C. Credibility

Plaintiff submits that "[t]he ALJ's credibility assessment is generally deficient because of the" errors committed in weighing the foregoing medical opinions. [Doc. 17 at 23]. "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Because substantial evidence supports the assignment of little weight to the opinions of Dr. West and Dr. Summers, and great weight to the opinion of Dr. Webster-Clair, the Court finds that the ALJ did not err in concluding that Plaintiff's subjective allegations were less than fully credible.[6] *See Walters*, 127 F.3d at 531

---

[6] Plaintiff additionally suggests that she has an "exemplary work history" that enhances her credibility, a factor the ALJ was required to consider but failed to do so. [Doc. 17 at 24, 26]. The Court finds no merit in Plaintiff's contention. First, there is a difference between what the ALJ must consider and what she must say in her written decision. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[An] ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)). Second, while the regulations do contemplate a claimant's past work as a factor that may be considered in assessing subjective allegations of pain, it is but one factor among many that the ALJ should take into account. 20 C.F.R. § 404.1529(c)(3). Here, the ALJ concluded that Plaintiff was not entirely credible based on her reported daily living activities, as well as the type and frequency of treatment she received particularly with regard to the minimal mental health treatment Plaintiff obtained. [Tr. 32-33]. These were appropriate factors to consider under the regulations. *See* 20 C.F.R. 404.1529(c)(3).

(discounting credibility is appropriate when the "ALJ finds contradictions among medical reports, claimant's testimony, and other evidence").

## D.     VE Testimony

Relying on VE testimony at step five, the ALJ determined that other work existed in the national economy that Plaintiff could perform given her RFC, including as an inspector/tester/sorter, *Dictionary of Occupational Titles* ("DOT") #732.587-014, cashier, DOT #211.462-010, and office clerk, DOT #222.587-038.  [Tr. 35].  Plaintiff argues that the ALJ failed to properly resolve post-hearing objections regarding the VE's testimony, and therefore, the ALJ's reliance on the testimony does not constitute substantial evidence at step five.  [Doc. 17 at 4-7].

Social Security Ruling 00-4p addresses the use of VE testimony and other occupational resources in the evaluation of disability claims.  2000 WL 1898704, at *1 (Dec. 4, 2000).  The ruling explains that in making disability determinations, the agency relies "primar[ily] on the DOT . . . for information about the requirements of work in the national economy."  *Id.* at *2.  However, because "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," VE testimony is appropriate to resolve more complex vocational issues and "may be able to provide more specific information about jobs or occupations than the DOT."  *Id.* at *2-3.  The ruling imposes an affirmative duty on the ALJ to ask about any possible conflicts between the VE's testimony and information provided in the DOT.  *Id.* at *4.  If a conflict is identified by the VE, the ALJ must "obtain a reasonable explanation for the apparent conflict" before the ALJ can rely on the VE's testimony.  *Id.*; *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603–05 (6th Cir. 2009).

Plaintiff submits that a "facial inconsistency" exists between the VE's testimony and the information provided in the DOT with regard to reaching.  [Doc. 17 at 4].  Specifically, while

Plaintiff's RFC limits her to occasional overhead reaching with the right upper extremity, the jobs identified by the VE require frequent reaching per the DOT's description. [*Id.*]. The alleged inconsistency was brought to the ALJ's attention in Plaintiff's 18-page post-hearing brief that objected to the VE's testimony on numerous grounds. [*Id.*]; [*see* Tr. 410-27]. Although Plaintiff concedes that the ALJ acknowledged and discussed the post-hearing objections in her written decision, Plaintiff submits that the ALJ did not adequately resolve the conflict regarding the overhead reaching requirement. [Doc. 17 at 5].

Ultimately, the Court finds that the ALJ failed to "obtain a reasonable explanation" for the apparent conflict between the VE's testimony regarding Plaintiff's ability to perform the three identified jobs and the DOT's description of these jobs requiring frequent reaching. *See* Social Security Ruling 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). The ALJ first asked the VE whether her testimony was consistent with the DOT. [Tr. 94]. The VE explained that with regard to the limitation of occasional reaching overhead with one extremity, the DOT does not differentiate between bilateral reaching or reaching with different extremities. [*Id.*]. The ALJ then failed to further question the VE regarding this discrepancy.

A review of other Social Security disability cases nationwide reveals conflicting approaches as to whether a conflict exists between a DOT job description requiring frequent reaching, and a VE's testimony that a claimant limited in only one extremity could perform the listed job. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017) (rejecting argument that the fact that the DOT does not expressly require bilateral reaching in a job description implies that only unilateral reaching is required, stating "we cannot determine from this record, the *DOT*, or our common experience whether the jobs in question require both hands"); *Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) ("Although the [DOT] does not expressly state that the occupations

identified by the expert require frequent bilateral overhead reaching, [its] broad definition of 'reaching' means that they certainly may require such reaching."), *both cases cited in Snyder v. Comm'r of Soc. Sec.*, No. 17-12147, 2018 WL 4016971, at *6 (E.D. Mich. July 24, 2018), *report and recommendation adopted by*, 2018 WL 4005777 (E.D. Mich. Aug. 22, 2018); *see also Griego v. Colvin*, No. EDCV14-375-E, 2014 WL 5305815, at *3 (C.D. Cal. Oct. 15, 2014) (reviewing the definition of "reaching" in Social Security Ruling 85-15 as "extending the hands and arms in *any* direction," and collecting cases to state that "[c]onsequently, many courts have discerned a conflict between the requirement of frequent reaching and a preclusion or restriction on reaching overhead or above the shoulder").

However, "[m]any courts presented with this exact issue . . . have refused to discern a conflict between the requirement of frequent reaching and a vocational expert's testimony that a person restricted in one extremity could perform the job." *Byers v. Colvin*, No. 4:15-CV-164, 2017 WL 1251079, at *5 (E.D. Tex. Mar. 10, 2017); *see, e.g.*, *Lessley v. Colvin*, No. 3:15-cv-96-HDM-VPC, 2015 WL 10710837, at *5 (D. Nev. Nov. 13 2015) (collecting cases to find "[o]ther district courts, including those in this district, have generally found that a claimant with limited use of one arm is not precluded from performing a job with frequent reaching, unless the DOT job description explicitly requires bilateral reaching."), *both cases cited in Issac v. Comm'r of Soc. Sec.*, No. 1:16-CV-1345, 2017 WL 3705902, at *9 n.4 (N.D. Ohio Aug. 28, 2017).

Importantly, "the Sixth Circuit Court of Appeals has not yet weighed in on the precise requirements of the affirmative duty set forth in SSR 00-4p." *Sprouse v. Colvin*, No. 1:15-CV-151HBB, 2016 WL 6078296, at *5 (W.D. Ky. Oct. 14, 2016). However, "because at best it is unclear whether the [listed job positions] require[ ] frequent bilateral reaching," the Court finds that an apparent conflict exists between the VE's testimony and the information provided in the

DOT description. *Snyder*, 2018 WL 4016971, at *6; *see also Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) ("Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching. If the explanation does not provide a reasonable basis for relying on the expert's testimony, that testimony cannot provide substantial evidence for a denial of benefits."); *Bobo v. Berryhill*, 2017 WL 7051997, at *23 (N.D. Ohio Sept. 21, 2017) (holding it is proper for the ALJ, "not for this Court to decide," the manipulative requirements of the listed job findings in step five), *report and recommendation adopted by*, 2018 WL 562933 (N.D. Ohio Jan. 24, 2018).

Therefore, an apparent conflict exists between the VE's testimony and the information provided in the DOT with respect to the three listed jobs which the VE testified that an individual with Plaintiff's vocational background and limitations consistent with Plaintiff's RFC could perform. In response to the ALJ's question about potential conflicts, the VE stated that the DOT does not differentiate between bilateral reaching or reaching with different extremities. [Tr. 94]. These three positions all require frequent reaching, which is inconsistent with the ALJ's RFC determination that Plaintiff was limited to occasionally reaching above shoulder level with her right upper extremity. [Tr. 26].

Although the ALJ inquired about potential conflicts with the VE's testimony, the ALJ subsequently failed to satisfy the affirmative responsibility to "obtain a reasonable explanation" after this apparent conflict was identified. Social Security Ruling 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Specifically, the ALJ failed to obtain further testimony from the VE as to Plaintiff's ability to perform the listed jobs with respect to the frequent reaching required in the DOT description. While the VE did testify that a hypothetical person with Plaintiff's RFC

limitations could perform the three listed jobs [Tr. 86], the ALJ did not obtain an explanation as to the effect that the stated conflict, that the DOT doesn't differentiate between bilateral reaching or reaching with different extremities, had on the VE's answer.

Accordingly, because the ALJ did not obtain a reasonable explanation, as required by Social Security Ruling 00–4p, for the apparent conflict between the VE's testimony and the DOT's description of the identified job titles regarding frequent reaching, the Court cannot find that substantial evidence supports the ALJ's conclusion that Plaintiff can perform the inspector/tester/sorter, cashier, and office clerk jobs. Therefore, the Court will remand the case to allow the ALJ to obtain a reasonable explanation of this apparent conflict.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED IN PART AND DENIED IN PART** and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED IN PART AND DENIED IN PART**. This case will be **REMANDED** to the SSA for the ALJ to address the apparent conflict between the VE's testimony and the reaching requirements in the DOT.

ORDER ACCORDINGLY.

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge